UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KORY T. O'BRIEN, CDCR #AM-1378, <br><br> Plaintiff, <br><br> vs. <br><br> ALDO GARCIA, Correctional Plant Ops. Supervisor; JORGE SANTANA, Associate Warden; DANIEL PARAMO, Retired Former Warden; RAQUEL BUCKEL, Associate Warden; PATRICK COVELLO, Warden; C. MURPHY, Appeals Examiner; M. VOONG, Chief – Office of Appeals, <br><br> Defendants. | Case No.: 3:19-cv-01113-JAH-MDD <br><br> **ORDER:** <br><br> **1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [ECF No. 2]** <br><br> **AND** <br><br> **2) DISMISSING COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2) AND 28 U.S.C. § § 1915A(b)** |

Kory T. O'Brien ("Plaintiff"), proceeding pro se, is currently incarcerated at Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, and has filed this civil rights action pursuant to 42 U.S.C. § 1983. *See* Compl., ECF No. 1.

Plaintiff claims various RJD Wardens, a correctional supervisor, and inmate appeals officials denied him equal protection and exposed him to harmful conditions of confinement in July and August 2017, and then retaliated against him in May 2019 after

he continued to complain and file multiple grievances. *See id.* at 1-4, 8, 14. He seeks injunctive relief and "damages to be claimed at a later date." *Id.* at 19.

Plaintiff did not prepay the civil filing fee required by 28 U.S.C. § 1914(a) at the time of filing, but instead filed a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a) (ECF No. 2). He has since submitted a certified Prison Certificate and copies of his CDCR Inmate Trust Account Statement Report in support of his IFP Motion (ECF No. 5).

**I.    IFP Motion**

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner who is granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce,* 136 S. Ct. at 629; *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for ... the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. June 1, 2016). The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

2

3:19-cv-01113-JAH-MDD

monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

In support of his IFP Motion, Plaintiff has submitted certified copies of his CDCR Inmate Statement Report showing his trust account activity at the time of filing, as well as a Prison Certificate signed by a RJD Accounting Officer attesting as to his monthly balances and deposits. *See* ECF No. 5 at 1-6; 28 U.S.C. § 1915(a)(2); S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119. These statements show Plaintiff had average monthly deposits of $203.32 to his account, and maintained an average balance of $132.98 in his account over the six month period preceding the filing of his current Complaint. But he had an available balance of only $10.92 to his credit at RJD at the time of filing. *See* ECF No. 5 at 1, 3.

Based on this accounting, the Court **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 2) and assesses his initial partial filing fee to be $40.66 pursuant to 28 U.S.C. § 1915(b)(1). However, because Plaintiff's available balance may be insufficient to satisfy this initial fee, the Court will direct the Secretary of the CDCR, or his designee, to collect it only if sufficient funds are available in Plaintiff's account at the time this Order is executed. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Bruce*, 136 S. Ct. at 630; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay ... due to the lack of funds available to him when payment is ordered."). The remaining balance of the $350 total fee owed in this case must

be collected by the agency having custody of the prisoner and forwarded to the Clerk of the Court pursuant to 28 U.S.C. § 1915(b)(2).

**II.     Initial Screening per 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)**

   A.     Standard of Review

Notwithstanding Plaintiff's IFP status or the payment of any partial filing fees, the PLRA also obligates the Court to review complaints filed by all persons proceeding IFP and by those, like Plaintiff, who are "incarcerated or detained in any facility [and] accused of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms or conditions of parole, probation, pretrial release, or diversionary program," "as soon as practicable after docketing," and ideally before the service of process upon any Defendant. *See* 28 U.S.C. §§ 1915(e)(2) and 1915A(b). Under these statutes, the Court must sua sponte dismiss complaints, or any portions thereof, which are frivolous, malicious, fail to state a claim, or which seek damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (§ 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of § 1915[] is to 'ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 907 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)).

All complaints must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" falls short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

4

"When there are well-pleaded factual allegations, a court should assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000) ("[W]hen determining whether a complaint states a claim, a court must accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff."); *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (noting that § 1915(e)(2) "parallels the language of Federal Rule of Civil Procedure 12(b)(6)").

While the court "ha[s] an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), it may not "supply essential elements of claims that were not initially pled." *Ivey v. Board of Regents of the University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

B.  Plaintiff's Factual Allegations

Since November 2016, Plaintiff has been assigned to RJD's Level III D-Yard in Building 16. *See* Compl., ECF No. 1 at 4. In Count 1, he claims to have filed CDCR 602 Inmate Grievance, Log No. RJD-D-17-5000 on August 24, 2017, claiming prison officials denied his rights to equal protection by failing to provide inmates in Building 16 with the same number of in-cell power outlets and coaxial cable TV connections as the inmates in Building 20. *Id.* at 4-5, 15. Plaintiff claims Defendant Garcia denied a "work order" request to "correct the inequal treatment." *Id.* at 4-5. Plaintiff admits that while he and other inmates in Building 16 have access to dayroom TVs which "provide college educational courses," inmates in Building 20 may access those courses from their cells, and need not negotiate with their fellow inmates for access to Building 16's dayroom TV pursuant to Warden Paramo and Covello's "Operational Plan #96." According to Plaintiff, this Plan provides for majority rule viewing and requires that inmates in Building 16 resolve their TV channel priority issues on their own. *Id.* at 6. Plaintiff contends Defendants Garcia, Murphy, Voong, Santana, and Paramo all "chose to not fix

5

the violation" via the CDCR 602 inmate appeals process. *Id.* at 7.

In Counts 2 and 3, Plaintiff claims Defendants' failures to provide him with clean air and sufficient ventilation violates his right to equal protection and amounts to cruel and unusual punishment. *Id.* at 8, 11. Specifically, Plaintiff claims RJD's Building 16 has an intake and exhaust air ventilation system, but the ventilation cover over the air vent in his cell is "80% to 90% filled with foreign debri[s]," and he is therefore "forced to breathe toxic air." *Id.* at 8, 11.[2]

With respect to his equal protection claim, Plaintiff alleges he asked Defendant Garcia to address the issue and requested that his cell exhaust ventilation be cleaned. *Id.* at 9, 15-16. He claims Defendant Garcia informed him that the ventilation in Building 16 is "closed system" that "does not allow cleaning." *Id.* at 8. He claims this "lie" has been "restated by Defendants G. Murphy, M. Voong, R. Buckel, and D. Paramo" in response to his multiple CDCR Form 22s[3] and CDCR 602 Inmate Appeal Log No. RJD-D-18-02019, and that he is "being treated differently" based on his "economic[] group" because other inmates in both Building 16 and Building 20 had their cell ventilation exhausts cleaned after they were "willing to pay" for it. *Id.* at 8-10, 15.

With respect to his cruel and unusual punishment claim, Plaintiff claims to suffer headaches, nosebleeds, and has difficulty breathing due to the "carcinogens,

---

[2] Plaintiff claims expertise on both Building 16's cell ventilation and plumbing systems based on his pre-incarceration profession as a California-licensed Class B General Building Contractor. *See* Compl., ECF No. 1 at 9.

[3] "A Form 22 is intended to facilitate the 'timely resolution of routine matters through an effective and non-conflictive communication process,' pursuant to which, 'Department staff shall attempt to resolve inmate and parolee issues expeditiously.'" *Coleman v. Hubbard*, No. 2:12-CV-00985 KJN P, 2012 WL 3038571, at *9 (E.D. Cal. July 25, 2012) (quoting Cal. Code Regs., tit. 15 § 3086 (a) (eff. 2011)). "The regulations require an initial response to a submitted Form 22, within three working days," and "a prisoner may thereafter resubmit the Form 22 to the reporting employee's supervisor, who must provide a response within seven calendar days." *Id.*, (citing § 3086(f)(4), (h)).

environmental toxins and pathogens" circulated through the vents in his cell. *Id.* at 11-12. He claims to have sent a CDCR Form 22 to Scott Stedman,[4] the "top prison official at Plant Ops," on July 5, 2017, complaining "about the toxic debris ventilation system," but it was Defendant Garcia who interviewed him in response on May 3, 2018, and again on June 19, 2018. *Id.* Plaintiff claims Garcia, together with Defendants G. Murphy, M. Voong, P. Covello, R. Buckel and D. Paramo, all "have knowledge of the need to clean [his] ventilation … through CDCR 22's and CDCR 602s," but they have "chose[]n to be deliberately indifferent." *Id.* at 12, 13.

Finally, in Count 4, Plaintiff claims Defendant Garcia has "participate[d] in a retaliatory act against [him]" because he has "complained both verbally and in writing" about both his cruel and unusual punishment and his unequal treatment. *Id.* at 10, 14. In support of this claim, Plaintiff lists a series of the CDCR Form 22 and CDCR 602 Inmate Appeals he filed from June 27, 2017, through April 22, 2019, all related to both his TV access and cell ventilation claims, and describes Garcia's responses to those complaints. *Id.* at 14-16. On April 26, 2019, Plaintiff claims "plumbers from plant ops changed the toilet flushing capabilities to only [his] cell[,] and limit[ed] the times [his] toilet w[ould] flush." *Id.* at 16. When Plaintiff inquired as to the cause of the flush limitation with the inmate plumber, he was told it was due to a change with a control unit. After Plaintiff asked why toilets in other cells connected to the same unit were not so limited, the inmate plumber "change[d] the flush capabilities in the other units," and told those inmates it was "[be]cause Kory [Plaintiff] keeps 602ing and 22ing plant ops." *Id.*

Plaintiff contends "the only way the inmate plumber was able to know of such CDCR Forms is if he was informed by Defendant A. Garcia." *Id.* at 16-17. Plaintiff concludes Garcia used the plumber "as a pawn" in order to take "adverse action" against him for having exercised his First Amendment rights. *Id.* at 17.

---

[4] Plaintiff does not name Stedman as a Defendant.

7

C.   42 U.S.C. § 1983

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotation marks and citations omitted). To prevail on a claim for the violation of constitutional rights under 42 U.S.C. § 1983, a plaintiff must prove two elements: (1) that a person acting under the color of state law committed the conduct at issue; and (2) that the conduct deprived the plaintiff of some right, privilege, or immunity conferred by the Constitution or the laws of the United States. *See Nelson v. Campbell*, 541 U.S. 637, 643 (2004). A section 1983 suit may be dismissed for failure to state a claim "if the complaint is devoid of factual allegations that gave rise to a plausible inference of either element." *Naffe v. Frey*, 789 F.3d 1030, 1036 (9th Cir. 2015).

D.   Equal Protection Claims – TV & Air Vents – Counts 1 & 2

The Fourteenth Amendment's Equal Protection Clause requires that persons similarly situated be treated alike. *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439; *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013); *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013); *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008). An equal protection claim may be established in two ways. The first method requires a plaintiff to show that the defendant has intentionally discriminated against the plaintiff on the basis of his membership in a protected class. *Hartmann*, 707 F.3d at 1123; *Furnace*, 705 F.3d at 1030; *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003); *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166-67 (9th Cir. 2005); *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001). Under this theory of equal protection, Plaintiff must allege that Defendants' actions were a result of his membership in a suspect class such as race, religion, or alienage. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005).

8

Here, Plaintiff does not allege to be a member of any suspect class, and he fails to allege Defendants denied him "multiple power outlets and a coaxial TV connection" inside his cell, or "forced [him] to breathe toxic air," *see* Compl., ECF No. 1 at 5, 8, based on his membership in any suspect class.

To the extent neither his TV access or cell ventilation disputes involve a suspect classification, Plaintiff may establish an equal protection claim only if he alleges facts sufficient to plausibly show Defendants intentionally treated similarly situated inmates differently without a rational basis for doing so. *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 601-02 (2008); *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *San Antonio School District v. Rodriguez*, 411 U.S. 1 (1972); *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008); *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008). But to state an equal protection claim under this "class of one" theory, he must allege facts to plausibly show that: (1) he is a member of an identifiable class; (2) he was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. *Nurre v. Whitehead*, 580 F.3d 1087, 1098 (9th Cir. 2009) (citing *Village of Willowbrook*, 528 U.S. at 564). He must further allege discriminatory intent. *See Washington v. Davis*, 426 U.S. 229, 239-240 (1976); *Serrano*, 345 F.3d at 1081-82; *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997).

Plaintiff alleges that RJD's D-Yard includes five inmate housing buildings which are numbered 16-20. *See* Compl., ECF No. 1 at 4. Plaintiff alleges he is currently classified as Security Level III and is housed in Building 16, and with respect to Count I, he claims he is being treated differently because his cell does not have the same in-cell TV and cable accessibility as other inmates' whose cells are located in Building 20. *Id.* at 5. But he does *not* allege any further facts to plausibly show how or why he is similarly situated to inmates in Building 20, and he pleads no further facts from which the Court could conclude that Defendants' housing or cable circuitry differentiation lacks a rational or penological interest. Accordingly, Plaintiff has failed to state an equal protection claim

9

with respect to Count 1. *See also Hoban v. California Dep't of Corr.*, No. 1:09-CV-1752MJSPC, 2010 WL 5136026, at *3 (E.D. Cal. Dec. 10, 2010) (sua sponte dismissing equal protection claims alleging "Class III prisoners held in other parts of the prison [were] afforded access to programming and allowed to possess personal fans, televisions, and other electronic devices, while those housed in the Gymnasium [were] not.").

Plaintiff's equal protection claims with respect to his air ventilation (Count 2) fail to state a claim for similar reasons. He alleges he is "being treated differently," points to the fact that his cell ducts have not been cleaned, and disputes Defendants' allegedly false claim that "plant operations [have] no way or means of cleaning [the] cell ventilation exhaust system," because other inmates in both Buildings 16 and 20 had theirs cleaned once "they were willing to pay for [the] cleaning." *See* Compl., ECF No. 1 at 9-10. "If the government intentionally and without rational basis treats an individual differently than others who are similarly situated, a 'class of one' equal protection claim may lie. *See North Pacifica LLC*, 526 F.3d at 486. But Plaintiff's claim does not arise from his "unique treatment" when compared to other similarly situated individuals, which is the theory underlying "class of one" claims. *Nurre*, 580 F.3d at 1098. Rather, he contends he and others are being "extort[ed]" and discriminated against based on their "economic[] group" and "financial status." *Id.* at 10. But indigent prisoners are not a suspect class. *See Taylor v. Delatoore*, 281 F.3d 844, 849 (9th Cir. 2002) (indigent prisoners are not a suspect class); *see also Pleasant v. Cty. of Merced*, 669 F. App'x 388 (9th Cir. 2016). And Plaintiff does not allege any further facts to plausibly suggest he is otherwise a member of a group comprised of "similarly situated persons so that the factor motivating the alleged discrimination can be identified." *Thornton*, 425 F.3d at 1167, 1168 ("[D]ifferent treatment of unlike groups does not support an equal protection claim.").

At bottom, Plaintiff claims he being treated differently than prisoners who are "willing to pay" for vent cleaning. *See* Compl., ECF No. 1 at 10. But "[e]qual protection does not require identity of treatment, *Garrison v. United States*, 930 F.2d 920 (9th Cir. 1991), and "[a]n equal protection claim will not lie by conflating all persons not injured

10

into a preferred class receiving better treatment." *Thornton,* 425 F.3d at 1167; *see also Furnace*, 705 F.3d at 1031; *cf. Wilson v. Nesbeth*, 341 F. App'x 291, 293 (9th Cir. 2009) (affirming district court's dismissal of prisoner's equal protection claim because he failed to allege facts suggesting that "Enhanced Out Patient" inmates were similarly situated to other inmates).

### E. Cruel and Unusual Punishment Claim – Air Vents – Count 3

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Eighth Amendment "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency ...,' against which we must evaluate penal measures." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quoting *Jackson v. Bishop*, 404 F.2d 571, 579 (8th Cir. 1968)). Although the Eighth Amendment does not mandate that prisons be comfortable, *see Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), or that they provide every amenity a prisoner might find desirable, *see Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982), it also does not permit inhumane prison conditions. *See Farmer*, 511 U.S. at 832.

An inmate complaining of conditions of confinement must allege facts that, if true, would satisfy both prongs of a bifurcated test. First, Plaintiff must allege that, objectively, the deprivation alleged is "sufficiently serious" such that it results in the denial of "the minimal civilized measure of life's necessities." *Id.* at 834. "Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). "The circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred. 'The more basic the need, the shorter the time it can be withheld.'" *Id.* (citing *Ray*, 682 F.2d at 1259).

Second, from a subjective point of view, Plaintiff must allege that Defendants acted with a sufficiently culpable state of mind, *i.e.*, with "deliberate indifference."

11

*Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991). "A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

The Court finds that Plaintiff has alleged facts sufficient to satisfy the objective prong of his "inhumane prison conditions" claim. *See id.* at 838. Ventilation is a fundamental attribute of "shelter" and "sanitation," both of which are basic Eighth Amendment concerns. *See Toussaint v. McCarthy*, 597 F. Supp. 1388, 1409 & n.39 (N.D. Cal. 1984). "Inadequate 'ventilation and air flow' violates the Eighth Amendment if it 'undermines the health of inmates and the sanitation of the penitentiary.'" *Keenan v. Hall*, 83 F.3d 1083, 1090 (9th Cir. 1996), *amended*, 135 F.3d 1318 (9th Cir. 1998) (quoting *Hoptowit v. Spellman*, 753 F.2d 779, 784 (9th Cir. 1985)).

Here, Plaintiff alleges his cell vents "are causing [him] to have headaches, nosebleeds, and breathing difficulties," *see* Compl., ECF No. 1 at 12, and that the toxicity of the debris in his vents was exacerbated by an October 2018 fire that broke out in another cell. *Id.* at 8. The Court finds these allegations sufficient to satisfy the objective component of his Eighth Amendment claim. *See Farmer,* 511 U.S. at 834; *Keenan*, 83 F.3d at 1090; *Balzarini v. Diaz*, No. 518CV01962RGKMAAX, 2018 WL 6591423, at *4–6 (C.D. Cal. Dec. 14, 2018) (finding prisoner's claims of having suffered weakness, dizziness, nausea, and difficulty breathing due to due extreme heat and lack of cell ventilation objectively serious for purposes of initial 28 U.S.C. §§ 1915(e) and § 1915A review).

However, Plaintiff has failed to allege facts sufficient to plausibly show that any of the named Defendants acted with the "deliberate indifference" required to support the subjective component of his Eighth Amendment claim. He contends Defendants Garcia, Murphy, Voong, Covello, Buckel, and Paramo "have knowledge of the need to clean

[his] ventilation," due to the "CDCR 22s and CDCR 602s" he filed, and concludes that they "chose to be 'deliberately indifferent'" when they denied his appeals. *See* Compl., ECF No. 1 at 12. But without more, these conclusory allegations fail to provide the factual content necessary to allow the Court to draw a reasonable inference that each Defendant through his or her "own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. 676. Instead, Plaintiff must offer some "further factual enhancement" to plausibly suggest each of these Defendants were actually "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]," and that each of them "also dr[e]w th[at] inference." *Farmer*, 511 U.S. at 837; *Iqbal*, 556 U.S. at 678. A pleading like Plaintiff's "that offers 'labels and conclusions' or [only] 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citing *Bell Atlantic Corp.*, 550 U.S. at 555).

At bottom, Plaintiff seeks to hold Defendants Garcia, Murphy, Voong, Covello, Buckel, and Paramo liable for failing to satisfactorily respond to his CDCR Form 22 requests or comport with his demands via the CDCR 602 appeals process. But Plaintiff has no independent constitutional right to an effective grievance or appeal procedure. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988); *see also, e.g., George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) (holding that only persons who cause or participate in civil rights violations can be held responsible and that "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation"); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (holding that prison officials whose only roles involved the denial of the prisoner's administrative grievances could not be held liable under Section 1983), *cert. denied*, 530 U.S. 1264 (2000); *Wright v. Shapirshteyn*, No. CV-1-06-0927-MHM, 2009 WL 361951, at *3 (E.D. Cal. Feb. 12, 2009) ("[W]here a defendant's only involvement in the allegedly unconstitutional conduct is the denial of administrative grievances, the failure to intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior for purposes of § 1983."); *Velasquez v.*

13

*Barrios*, No. 07cv1130-LAB (CAB), 2008 WL 4078766, at *11 (S.D. Cal. Aug. 29, 2008) ("An official's involvement in reviewing a prisoner's grievances is an insufficient basis for relief through a civil rights action.").

      F.      Retaliation Claim – Defendant Garcia – Count 4

Lastly, Plaintiff contends Defendant Garcia used an inmate plumber "as a pawn" in order to take "adverse action" against him for having exercised his First Amendment rights. *See* Compl., ECF No. 1 at 17. Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a 1983 claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995).

A retaliation claim has five elements. *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). First, Plaintiff must allege that the retaliated-against conduct is protected. *Watison*, 668 F.3d at 1114.[5] Second, Plaintiff must allege Defendants took adverse action against him.[6] *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). Third, Plaintiff must allege a causal connection between the adverse action and the protected conduct.[7] *Watison*, 668 F.3d at 1114. Fourth, Plaintiff must allege the "official's acts would chill or

---

[5] The filing of an inmate grievance is protected conduct. *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005).

[6] The adverse action need not be an independent constitutional violation. *Pratt*, 65 F.3d at 806. "[T]he mere threat of harm can be an adverse action...." *Brodheim*, 584 F.3d at 1270.

[7] Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal. *Watison,* 668 F.3d at 1114 (citing *Pratt*, 65 F.3d at 808 ("[T]iming can properly be considered as circumstantial evidence of retaliatory intent.")). However, a retaliation claim cannot rest solely on the logical fallacy of *post hoc, ergo propter hoc*, *i.e.*, "after this, therefore because of this." *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000); *Morman v. Dyer*, No. 16-CV-01523-SI, 2018 WL 2412183, at *7 (N.D. Cal. May 29, 2018).

silence a person of ordinary firmness from future First Amendment activities." *Rhodes*, 408 F.3d at 568 (internal quotation marks and emphasis omitted).[8] Fifth, Plaintiff must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution...." *Rizzo*, 778 F.2d at 532; *Watison*, 668 F.3d at 1114-15.

As currently pleaded, the Court finds Plaintiff has alleged facts sufficient to plausibly satisfy the first two elements of a retaliation claim. He points to a series of CDCR Form 22 requests and CDCR 602 appeals he alleges to have addressed to Defendant Garcia during the two-year period before his toilet's flush capacity was altered. *See* Compl., ECF No. 1 at 14-16. However, he falls far short of pleading any facts sufficient to support the causation element, or any of the other elements necessary to sustain a claim of retaliation. He offers no facts to suggest Garcia authorized any change to the control unit connected to his cell or any other, and he offers nothing more than conjecture to suggest it was Garcia who altered the plumbing in his cell *because* he "ke[pt] 602ing and 22ing plant ops." *See* Compl., ECF No. 1 at 16; *Watison*, 668 F.3d at 1114; *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989) (retaliation claims require a showing that Plaintiff's protected conduct was "the 'substantial' or 'motivating' factor behind the defendant's conduct."). "[M]ere speculation that defendants acted out of retaliation is not sufficient." *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014); *see also Morman v. Dyer*, No. 16-CV-01523-SI, 2018 WL 2412183, at *7 (N.D. Cal. May 29, 2018).

Moreover, Plaintiff does not allege facts to show why altered or limited "toilet flush capabilities," *see* Compl., ECF No. 1 at 16, "would chill or silence a person of ordinary firmness from future First Amendment activities," *Rhodes*, 408 F.3d at 568, and he fails to claim that he "suffered some other harm," *Brodheim*, 584 F.3d at 1269, that

---

[8] "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," *Brodheim*, 584 F.3d at 1269, that is "more than minimal," *Robinson*, 408 F.3d at 568 n.11.

15

1 was "more than minimal." *Rhodes*, 408 F.3d at 568 n.11. Finally, Plaintiff fails to allege that any change to the plumbing control unit supplying either his cell or any other "failed to advance a legitimate goal of the correctional institution." *Rizzo*, 778 F.2d at 532; *Watison*, 668 F.3d at 1114-15. Generally, it is the role of "prison administrators ..., and not the courts, to make the difficult judgments concerning institutional operations." *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 128 (1977); *Turner v. Safley*, 482 U.S. 78, 89 (1987).

Thus, for all these reasons, the Court finds Plaintiff's Complaint fails to state a claim upon which § 1983 relief can be granted, and dismisses it sua sponte in its entirety pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1). *See Lopez*, 203 F.3d at 1126-27; *Rhodes*, 621 F.3d at 1004. However, having now provided him with "notice of the deficiencies in his complaint," the Court will also grant Plaintiff an opportunity to fix them, if he can. *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (citing *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992)).

### III.  Conclusion and Order

For the reasons explained, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).

2. **DIRECTS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's prison trust account the initial $40.66 initial partial filing fee assessed, *if those funds exist at the time this Order is executed*, and to thereafter garnish the remainder of the $350 filing fee owed in this case by collecting monthly payments from his account in an amount equal to twenty percent (20%) of the preceding month's income and forwarding them to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS MUST BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Ralph Diaz, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001.

4. **DISMISSES** Plaintiff's Complaint for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b), and **GRANTS** him forty-five (45) days leave from the date of this Order in which to file an Amended Complaint which cures all the deficiencies of pleading noted. Plaintiff's Amended Complaint must be complete by itself without reference to his original pleading. Defendants not named and any claim not re-alleged in his Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

If Plaintiff fails to file an Amended Complaint within the time provided, the Court will enter a final Order dismissing this civil action based both on Plaintiff's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED**.

Dated: August 26, 2019

Hon. John A. Houston
United States District Judge