UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KORY T. O'BRIEN,<br>CDCR #AM-1378,<br><br>　　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>ALDO GARCIA, Correctional Plant Ops. Supervisor; JORGE SANTANA, Associate Warden; DANIEL PARAMO, Retired Former Warden; RAQUEL BUCKEL, Associate Warden; PATRICK COVELLO, Warden; C. MURPHY, Appeals Examiner; M. VOONG, Chief – Office of Appeals,<br><br>　　　　　　　　　　　Defendants. | Case No.: 3:19-cv-01113-JAH-MDD<br><br>**ORDER:**<br><br>**1) DISMISSING DEFENDANTS AND CLAIMS PURSUANT TO 28 U.S.C. § 1915(e)(2) AND 28 U.S.C. § 1915A(b)**<br><br>**AND**<br><br>**2) DIRECTING U.S. MARSHAL TO EFFECT SERVICE OF FIRST AMENDED COMPLAINT UPON DEFENDANT GARCIA PURSUANT TO 28 U.S.C. § 1915(d) AND Fed. R. Civ. P. 4(c)(3)** |

Plaintiff Kory T. O'Brien, a prisoner proceeding pro se and incarcerated at Richard J. Donovan Correctional Facility ("RJD"), in San Diego, California, filed this civil rights action pursuant to 42 U.S.C. § 1983 on June 14, 2019. *See* Compl., ECF No. 1.

**I.　Procedural Background**

In his original Complaint, Plaintiff claimed various RJD Wardens, a "Plant Ops" Supervisor, and two inmate appeals officials denied him equal protection and exposed

him to harmful conditions of confinement in July and August 2017, and then retaliated against him in May 2019 after he continued to complain and file multiple grievances. *See* Compl., at 1-4, 8, 14. He sought injunctive relief and "damages to be claimed at a later date." *Id.* at 19. Plaintiff did not pay the civil filing fee at the time of filing, but instead filed a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).

On August 26, 2019, the Court granted Plaintiff's Motion to Proceed IFP, but dismissed his Complaint *sua sponte* and in its entirety based on his failure to state a claim upon which relief can be granted pursuant to the mandatory screening required by 28 U.S.C. § 1915(e)(2) and § 1915A(b). *See* ECF No. 6. Plaintiff was provided notice of his pleading deficiencies, and was granted leave to amend them. *Id.* at 8–17.

On September 30, 2019, Plaintiff filed a First Amended Complaint ("FAC") (ECF No. 7) re-naming all the same Defendants and re-alleging four First, Eighth, and Fourteenth Amendment "Counts" or causes of action. *See* FAC at 2-23. He continues to seek injunctive relief and an unspecified amount of damages. *Id.* at 25.

**II.    Screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A**

A.    <u>Standard of Review</u>

Because Plaintiff is a prisoner and is proceeding IFP, his FAC, like his original Complaint, also requires a pre-answer screening which the Court conducts *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). As Plaintiff is now aware, under these statutes, the Court must dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

B. <u>Allegations in FAC</u>

As he did previously, Plaintiff divides the claims in his FAC into four separate causes of action. In Count 1, he claims Defendant A. Garcia, a Plant Operations Correctional Supervisor at RJD, violated his First Amendment rights by retaliating against him for having filing numerous CDCR 22s, CDCR 1824s and CDCR 602 inmate appeals related to the lack of clean air vents and cable and power outlets in his cell.[1] *See* FAC at 4–8. Specifically, Plaintiff claims Garcia, who is "second in command" and

---

[1] In his original Complaint, Plaintiff claimed to have expertise as to both Building 16's cell ventilation and plumbing systems because he was a licensed general building contractor before being incarcerated. *See* Compl., ECF No. 1 at 9.

3

responsible for approving all "work orders," either authorized or supervised another inmate plumber to limit the flush capabilities in Plaintiff's cell "because [he] ke[pt] 602ing plant operations." *Id.* at 5.

In Count 2, Plaintiff claims Garcia knew that the ventilation in Plaintiff's cell was toxic, personally interviewed him in response to his CDCR 602s, and acknowledged the "need for cleaning of the interior of the [ventilation] system," which was filled with "80–90%" of "foreign debri[s]." Plaintiff contends that while Garcia was personally aware of a "substantial risk of serious harm" caused by his exposure to pathogens, carcinogens, and mold, Garcia "ignored obvious dangers" and "failed to take reasonable steps to abate" the harm it caused him. *Id.* at 9–13. Plaintiff also claims Defendants Covello, Murphy, Voong, Buckel, and Paramo "forc[ed] [him] to breathe air containing known carcinogens," but he includes no additional factual allegations with respect to these parties or their actions concerning the ventilation in his cell. *Id.* at 10.

In Count 3, which Plaintiff labels "due process," he claims Defendants as a group denied him "the fundamental constitutional liberty right to clean air." *Id.* at 14. Plaintiff admits this Count "parallels [his] Eighth Amendment claim," but he asks the Court to liberally construe this claim under the Fourteenth Amendment, because it does not require that he "show a culpable state of mind." *Id.* at 15–16.

Finally, in Count 4, Plaintiff alleges Wardens Paramo and Covello signed an "official memo" which requires inmates housed in RJD's Building 16 to agree by majority vote which television programming is to be broadcast in the dayroom. *Id.* at 18–19. Plaintiff claims this institutional procedure violates his right to equal protection because "he is not receiving the same treatment," as inmates housed in Building 20. *Id.* at 18. Specifically, Plaintiff claims that because Building 20 is equipped with "coaxial connections" in inmate's cells, those inmates enjoy the ability to watch "college lectures" in their cells, and without the "undue burden" of having to "purchase both a digital antenna and an extension cord," and "worry about … conflict," because they are not "forced to argue with other inmates" in the dayroom. *Id.* at 19–20, 22.

C. Analysis

With respect to Counts 3 and 4, the Court finds Plaintiff's FAC still fails to state a plausible claim for relief against *any* of the named Defendants under the Fourteenth Amendment. *See* 28 U.S.C. § 1915(e)(2)(B)(ii), § 1915A(b)(1); *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121. With respect to Counts 1 and 2, the Court finds that while Plaintiff alleges facts sufficient to plausibly support both a First Amendment retaliation and an Eighth Amendment conditions of confinement claim against RJD's Plant Operations Supervisor, Aldo Garcia, his FAC fails to state either a First or Eighth Amendment deprivation on the part of any other Defendant.

*1. Count 3*

Specifically, in Count 3, Plaintiff claims Defendants as a group have violated his Fourteenth Amendment rights by failing to adequately address the deficiencies in RJD's ventilation which deprives him of the "fundamental constitutional liberty of the right to clean air." *See* FAC at 14. He contends "Defendants lack of maintenance and action … would shock the conscience of even a lay person," and therefore constitutes punishment in violation of  substantive due process. Plaintiff admits this claims "parallels [his] Eighth Amendment claim," as alleged in Count 2. *Id.* at 15–16.

The "touchstone of due process" is protection against arbitrary actions of the government. *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). The government violates an individual's substantive due process rights when it exercises government power against the individual without a legitimate governmental objective. *See Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998). Only the most egregious conduct is "arbitrary in the constitutional sense." *Collins v. Harker Heights*, 503 U.S. 115, 129 (1992). Indeed, only state action that "shocks the conscience" deprives an individual of substantive due process. *Lewis*, 523 U.S. at 847 (citing *Rochin v. California*, 342 U.S. 165, 172–73 (1952)). Whether a state actor's conduct "shocks the conscience" varies from case to case. *Id.* at 850; *Betts v. Brady*, 316 U.S. 455, 462 (1942). But it is clear is that the government's actions must be more egregious than negligence and must intend to cause

harm without a legitimate governmental justification. *Lewis*, 523 U.S. at 855 (emphasis added).

Plaintiff's inadequate ventilation claims do not meet this demanding standard. At most, his FAC alleges facts to plausibly suggest Defendant Garcia's deliberate indifference with respect to his respiratory health, *see e.g.*, FAC at 9–13, but that claim is separately pleaded as Count 2, and is more appropriately analyzed under the Eighth's Amendment's cruel and unusual punishment standards. *Graham v. Connor*, 490 U.S. 386, 395 (1989) (holding that if a more specific constitutional amendment—such as the Eighth Amendment—"provides an explicit textual source of constitutional protection" against a particular sort of government behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims."); *accord Albright v. Oliver*, 510 U.S. 266, 273 (1994); *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997).

    2.    *Count 4*

Plaintiff's equal protection claims against Wardens Paramo and Covello as alleged in Count 4 also fail to state a Fourteenth Amendment claim. *See* FAC at 17–23. As this Court has previously noted, the Equal Protection Clause requires that persons similarly situated be treated alike. *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439; *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013); *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013); *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008). An equal protection claim may be established in two ways. The first method requires a plaintiff to show that the defendant has intentionally discriminated against the plaintiff on the basis of his membership in a protected class. *Hartmann*, 707 F.3d at 1123; *Furnace*, 705 F.3d at 1030; *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003); *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166-67 (9th Cir. 2005); *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001). Under this theory of equal protection, Plaintiff must allege that Defendants' actions were a result of

///

his membership in a suspect class such as race, religion, or alienage. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005).

As was true with respect to his original pleading, Plaintiff's FAC still does not contend he is member of any suspect class, nor does it allege Wardens Paramo or Covello failed to equip his cell with a coaxial TV connection based on his membership in any suspect class. Thus, Plaintiff may establish an equal protection claim only if he alleges facts sufficient to plausibly show Covello and Paramo intentionally treated similarly situated inmates differently without a rational basis for doing so. *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 601-02 (2008); *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *San Antonio School District v. Rodriguez*, 411 U.S. 1 (1972); *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008); *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008). To state an equal protection claim under this "class of one" theory, however, Plaintiff must allege facts to plausibly show that: (1) he is a member of an identifiable class; (2) he was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. *Nurre v. Whitehead*, 580 F.3d 1087, 1098 (9th Cir. 2009) (citing *Village of Willowbrook*, 528 U.S. at 564). He must further allege discriminatory intent. *See Washington v. Davis*, 426 U.S. 229, 239-240 (1976); *Serrano*, 345 F.3d at 1081-82; *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997).

In his FAC, Plaintiff declares that "even though he is housed in 16 Bldg, [he] is similarly situated when compared to a group of inmates housed in 20 Bldg," but is discriminated against without "rationality" because "Bldg 20 inmates have cells with multiple power outlets and a coaxial connection." *See* FAC at 18. Plaintiff claims inmates in both buildings "have general population programming," share similar disabilities, ages, religions, and criminal histories, and yet the lack of in-cell outlets in Building 16 results in fewer opportunities to access educational programming and "Prop. 57" credit-earning opportunities. *Id.* at 17, 20. However, prison officials have "full discretion" to control housing, classification, and access to rehabilitative programs, *see Moody v. Daggett*, 429

7

U.S. 78, 88 n.9 (1976), and are afforded wide-ranging deference in implementing and executing those decisions because discretion is needed to preserve internal discipline and maintain institutional security. *Bell v. Wolfish*, 441 U.S. 520, 547-48 (1979). "Although prisoners are entitled to equal protection, it does not follow that a prison must duplicate every … benefit it provides so that all [prisoners] are treated exactly the same." *Campbell v. Alameida*, No. C 03 4984 PJH PR, 2006 WL 2734330, at *5 (N.D. Cal. Sept. 25, 2006), *aff'd*, 295 F. App'x 130 (9th Cir. 2008).

Plaintiff also contends the different wiring in Buildings 16 and 20 is "without rationality," FAC at 18, but then claims a purported lack of "funding" is to blame. S*ee* FAC at 21. "[E]qual protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Fed. Comm. Com'n v. Beach Comm., Inc*., 508 U.S. 307, 313 (1993). Thus, a "classification that neither proceeds along suspect lines or infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.*; *see also Hill v. Kernan*, No. 2:19–CV–0184–TLN–DB P, 2019 WL 1259499, at *4 (E.D. Cal. Mar. 19, 2019), *report and recommendation adopted*, No. 2:19-CV-00184-TLN-DB, 2019 WL 2465275 (E.D. Cal. June 13, 2019).

The Court also notes that Plaintiff concedes other inmates in Building 16 face the same facility restrictions as he does. *See* FAC at 17–18. Thus, his equal protection claim does not appear to arise from his "unique treatment," which is the theory upon which a "class of one" claim depends. *Nurre*, 580 F.3d at 1098. Finally, he also admits educational programming remains available for him to view in Bldg. 16's dayroom, and that he may "purchase both a digital antenna and an extension cord" if he wishes to access educational programming privately in his cell. *See* FAC at 18–19. While Plaintiff claims this places an "undue financial burden" on him, *id.* at 18, indigency is not a suspect classification, *see Taylor v. Delatoore*, 281 F.3d 844, 849 (9th Cir. 2002); *Pleasant v. Cty. of Merced*, 669 F. App'x 388 (9th Cir. 2016), and "different treatment of

///

8

unlike groups does not support an equal protection claim." *Thornton*, 425 F.3d at 1167, 1168.

At bottom, Plaintiff continues to claim that the electrical wiring in the housing facility to which he has been assigned does not permit him the same in-cell television viewing opportunities as another facility would within the same prison. But "[e]qual protection does not require identity of treatment, *Garrison v. United States*, 930 F.2d 920 (9th Cir. 1991), and "[a]n equal protection claim will not lie by conflating all persons not injured into a preferred class receiving better treatment." *Thornton*, 425 F.3d at 1167; *see also Furnace*, 705 F.3d at 1031; *cf. Wilson v. Nesbeth*, 341 F. App'x 291, 293 (9th Cir. 2009) (affirming district court's dismissal of prisoner's equal protection claim because he failed to allege facts suggesting that "Enhanced Out Patient" inmates were similarly situated to other inmates); *Hoban v. California Dep't of Corr.*, No. 1:09-CV-1752–MJS–PC, 2010 WL 5136026, at *3 (E.D. Cal. Dec. 10, 2010) (sua sponte dismissing equal protection claims alleging "Class III prisoners held in other parts of the prison [were] afforded access to programming and allowed to possess personal fans, televisions, and other electronic devices, while those housed in the Gymnasium [were] not.").

### 3. Counts 1 & 2

Finally, with respect to Counts 1 and 2, the Court finds Plaintiff's FAC *does* contain factual allegations sufficient to plausibly state both a First Amendment retaliation claim and an Eighth Amendment conditions of confinement claim—but with respect to Defendant Garcia *only*. *See* 28 U.S.C. §§ 1915(e)(2) and 1915A(b); *Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678; *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) ("Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."); *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (to sustain an Eighth Amendment claim, a prisoner must

1 "objectively show that he was deprived of something 'sufficiently serious,' and make a subjective showing that the deprivation occurred with deliberate indifference to [his] health or safety." (citations omitted).

Because Plaintiff's FAC fails to provide any factual allegations which plausibly describe any personal participation on the parts of the remaining Defendants with respect to either the First Amendment retaliation or Eighth Amendment conditions of confinement claims comprising Counts 1 and 2, *see Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to … § 1983 suits, a plaintiff must plead that each Governmental–official defendant, through the official's own individual actions, has violated the Constitution."); and the Fourteenth Amendment due process and equal protection claims set forth in Counts 3 and 4 of Plaintiff's FAC fail to state a plausible claim for relief in their entirety, Defendants Santana, Paramo, Buckel, Covello, Murphy, and Voong are hereby **DISMISSED** as parties to this action pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b).

However, the Court will direct the U.S. Marshal to effect service of summons with respect to Plaintiff's FAC upon RJD's Correctional Plant Ops Supervisor, Aldo Garcia, on his behalf. *See* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties in [IFP] cases."); Fed. R. Civ. P. 4(c)(3) ("[T]he court may order that service be made by a United States marshal or deputy marshal ... if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915.").

### III. Conclusion and Orders

For all the reasons discussed, the Court hereby:

1. **DISMISSES** Defendants JORGE SANTANA, DANIEL PARAMO, RACQUEL BUCKEL, PATRICK COVELLO, C. MURPHY, and M. VOONG based on Plaintiff's failure to state a claim against them pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b) and **DIRECTS** the Clerk of the Court to terminate them as parties to this case.

*///*

2. **DIRECTS** the Clerk to issue a summons as to Plaintiff's First Amended Complaint (ECF No. 7) upon Defendant ALDO GARCIA and forward it to Plaintiff along with a blank U.S. Marshal Form 285 for this Defendant only. In addition, the Clerk will provide Plaintiff with a certified copy of this Order, a certified copy of the Court's August 26, 2019 Order Granting IFP (ECF No. 6), his First Amended Complaint (ECF No. 7), and a summons so that he may serve them upon Defendant GARCIA. Upon receipt of these materials, which comprise the "IFP Package," Plaintiff must complete the Form 285 as completely and accurately as possible, *include an address where Defendant Garcia may be served*, *see* S.D. Cal. CivLR 4.1.c, and return it to the United States Marshal according to the instructions the Clerk provides in the letter included in his IFP package.

3. **ORDERS** the U.S. Marshal to serve a copy of the First Amended Complaint and summons upon Defendant GARCIA as directed by Plaintiff on the USM Form 285 provided to him. All costs of that service will be advanced by the United States. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

4. **ORDERS** Defendant GARCIA, once served, to reply to Plaintiff's First Amended Complaint within the time provided by the applicable provisions of Federal Rule of Civil Procedure 12(a). *See* 42 U.S.C. § 1997e(g)(2) (while a defendant may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its sua sponte screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b), and thus, has made a preliminary determination based on the face on the pleading alone that Plaintiff has a "reasonable opportunity to prevail on the merits," defendant is required to respond).

5. **ORDERS** Plaintiff, after service has been effected by the U.S. Marshal, to serve upon Defendant GARCIA, or, if appearance has been entered by counsel, upon Defendant's counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Fed. R. Civ. P. 5(b). Plaintiff must

include with every original document he seeks to file with the Clerk of the Court, a certificate stating the manner in which a true and correct copy of that document has been was served on the Defendant or his counsel, and the date of that service. *See* S.D. Cal. CivLR 5.2. Any document received by the Court which has not been properly filed with the Clerk, or which fails to include a Certificate of Service upon the Defendant, may be disregarded.

**IT IS SO ORDERED**.

Dated: December 20, 2019

Hon. John A. Houston
United States District Judge